IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| on behalf of its agency, the | ) | |
| U.S. SMALL BUSINESS ADMINISTRATION | ) | |
| 409 3rd Street, S.W. | ) | |
| Washington, D.C.   20416 | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 13-cv-389 |
| | ) | |
| EDF RESOURCE CAPITAL, INC. | ) | |
| 1050 Iron Point Road | ) | |
| Folsom, California 95630 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| REDEMPTION RELIANCE, LLC | ) | |
| 1050 Iron Point Road | ) | |
| Folsom, California 95630 | ) | |
| | ) | |
|     Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

The United States of America, on behalf of the U.S. Small Business Administration

(SBA), brings this Complaint against EDF Resource Capital, Inc. (EDF) and Redemption

Reliance, LLC (Redemption) for: (a) amounts owed to SBA pursuant to statutes, regulations, and

agreements entered into between SBA and EDF; (b) the repayment and return of funds advanced

by SBA, real estate properties acquired and held by EDF or Redemption on behalf of SBA, and

the proceeds of the sale of such properties, pursuant to the Liquidation Pilot Program (described

in greater detail below); and (c) such other and further damages and equitable relief as may be

appropriate in this matter.

**INTRODUCTION**

1.      SBA is not only a provider of capital access to the small business community, but also a regulatory agency charged with overseeing the lenders participating in the SBA programs providing such capital access, and a steward of the public trust and taxpayers' funds.   Until December 17, 2012, defendant EDF was a Certified Development Company (CDC) authorized to participate in the 504 small business loan program administrated by SBA pursuant to 15 U.S.C. §§ 695-697(g) (the 504 Loan Program) and a participant in SBA's Premier Certified Lender Program (PCLP).

2.      On February 18, 2011, SBA instituted an enforcement proceeding against EDF, pursuant to 13 C.F.R. § 120.1600(a)(1), and notified EDF that, as a result of EDF's failure to meet the requirements of participating in the 504 Loan Program, SBA proposed to permanently revoke EDF's authority to participate in that program and to permanently transfer EDF's 504 loan portfolio to SBA or another CDC or entity designated by SBA.

3.      The enforcement proceeding continued over a 22-month period during which EDF had opportunities to object and to address and refute the grounds asserted by SBA.   EDF filed two lengthy papers, inclusive of declarations and legal argument, in response to SBA's notice of proposed enforcement.

4.      On December 17, 2012, SBA issued a final administrative decision (Decision): (a) permanently revoking EDF's authority to participate in all aspects of the 504 Loan Program; and (b) permanently transferring EDF's 504 loan portfolio and all rights associated therewith to interim servicers, as agents for SBA.   SBA advised EDF that the permanent revocation of EDF's authority to participate in all aspects of the 504 Loan Program prohibits EDF from making,

closing, servicing, liquidating, and litigating SBA 504 loans.   SBA directed EDF to immediately

turn over to SBA all funds held by EDF or its related parties in connection with EDF's SBA 504

loan portfolio.

5.      SBA's grounds for the Decision were as follows: (a) EDF failed to establish or

maintain a Loan Loss Reserve Fund as required by SBA's PCLP; (b) EDF failed to comply

materially with SBA's loan program requirement to pay invoiced obligations in a timely manner

as required by 15 U.S.C. § 697e(b)(2)(C) and/or 13 C.F.R. § 120.847(h)(2); and (c) EDF failed to

comply materially with SBA's 504 Loan Program requirement to maintain the financial ability to

operate as required by 13 C.F.R. § 120.825.   In the Decision, SBA determined that EDF was

insolvent.   A copy of the Decision, which explains these grounds in comprehensive detail, is

attached to this Complaint as Exhibit A.

6.      EDF challenged that Decision but, after the United States District Court for the

District of Columbia denied EDF's request for a temporary restraining order on December 21,

2012, EDF voluntarily dismissed its complaint without prejudice on January 4, 2013.[1]

7.      EDF stated to the Court in the same action that it "permanently cease[d] all

business operations" and dismissed all employees other than Frank Dinsmore, EDF's Chief

Executive Officer (CEO).[2]

---

[1] *See EDF Resource Capital, Inc. v. SBA et al.*, No. 12-cv-02043-JDB in the District Court for the District of
Columbia, docket items 8 and 11.

[2] *Id.*, docket item 10, at 1.

8.      The United States, on behalf of the SBA, now brings this action against EDF and Redemption for amounts due under statute and regulation, breach of contract, unjust enrichment, and conversion.

### JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to 15 U.S.C. § 634(b) and 28 U.S.C. §§ 1345, 1367, 3004 and 3012.

10.      Venue is proper in the District of Columbia because a substantial portion of the events and omissions giving rise to this action occurred here, including, without limitation, the authorization of EDF's participation in the 504 Loan Program, the authorization, renewal and extension of EDF's participation in the PCLP, the acknowledgement of EDF's election of the Alternative Loan Loss Reserve Pilot Program (ALLR Program), and the authorization of the Liquidation Pilot Program.   28 U.S.C. § 1391(b)(2).   Additionally, EDF contested SBA's final administrative decision in the District of Columbia.

### PARTIES

11.      SBA is an agency of the United States federal government whose mission is to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise."   15 U.S.C. § 631.

12.      EDF is a non-profit corporation existing under the laws of the State of California with its principal place of business in Folsom, California.   EDF is also a 501(c)(3) tax exempt entity.

13.     Redemption is a for-profit limited liability company existing under the laws of the State of California with its principal place of business in Folsom, California.   Upon information and belief, Redemption is affiliated with EDF and is owned and controlled by Frank Dinsmore.

FACTUAL BACKGROUND

A.     <u>General Overview of the 504 Loan Program</u>

14.     SBA carries out its mission, in part, through the 504 Loan Program, authorized by Title V of the Small Business Investment Act of 1958.   *See* 15 U.S.C. §§ 695-697g.

15.     The purpose of the 504 Loan Program is to foster economic development, create or preserve job opportunities, and stimulate growth, expansion, and modernization of small business concerns by providing long-term financing not otherwise available to small business concerns for the acquisition, construction, conversion, or expansion of fixed assets, including real estate and heavy machinery and equipment.   *See* 15 U.S.C. §§ 695(a), 696.

16.     Under the 504 Loan Program, SBA does not make loans directly to small business concerns.   Instead, as required by statute, the loans are made through authorized CDCs, which arrange, close, service, and, when necessary, liquidate and collect on 504 loans on SBA's behalf. *See* 15 U.S.C. § 695; 13 C.F.R. § 120.826(a).

17.     SBA provides 504 project financing to small business borrowers (Borrower) by issuing an "Authorization for Debenture Guarantee—SBA 504 Loan," which outlines the terms of the contemplated financing arrangement.   A 504 project typically is financed by: (a) a loan covering up to 50% of the project cost from a private Third Party Lender (Senior Third Party Lender Loan), which is secured by a senior lien on the underlying collateral; (b) a loan covering up to 40% of the project cost from a CDC (504 Loan) made on behalf of SBA and funded

5

through the CDC's issuance of a debenture (Debenture) 100% guaranteed by the full faith and

credit of the United States and secured by a junior lien on the collateral in favor of SBA; and (c)

an equity contribution from the Borrower of at least 10% of the project cost (Borrower

Contribution).

18.     CDCs obtain funds for 504 Program Loans through monthly sales of pooled

SBA-guaranteed CDC Debentures to investors.   The CDC assigns the instruments and collateral

of the 504 Program Loan to SBA at loan closing.   Borrower payments on 504 Program Loans

are collected monthly by the Fiscal and Transfer Agent (formerly Colson Services Corp., now

Wells Fargo Corporate Trust Services), which then distributes various fees from the Borrower's

monthly payment, including servicing fees, to CDCs and holds the remaining monthly payment

amount for semi-annual payments to the investors.

19.     If a Borrower defaults, SBA must honor its 100% guarantee by purchasing the

CDC Debenture from the investor.   *See* 15 U.S.C. § 697; 13 C.F.R. § 120.938.   SBA, as the

100% owner of the defaulted 504 Loan, then seeks to recover from the Borrower and any other

guarantor(s) of the loan, either on its own or through the CDC.   *See* 13 C.F.R. §§ 120.160,

120.975(a).

**B.     CDC Entry into the SBA 504 Loan Program**

20.     An entity becomes a CDC by applying to SBA for certification.   *See* 13 C.F.R.

§ 120.810.   The applicant must demonstrate that it satisfies the CDC certification and

operational requirements in 13 C.F.R. § 120.810(c) and other applicable regulations promulgated

by the SBA as the primary regulator of CDCs.   *Id.*; 13 C.F.R. §§ 120.820-120.830.

6

21.     To enforce compliance with its regulations, SBA may take enforcement actions against CDCs.   *See* 13 C.F.R. §§ 120.1400-120.1600.

**C.     EDF's Participation in the 504 Loan Program**

22.     In 1981, SBA certified EDF as a CDC; EDF thereupon began participating in the 504 Loan Program.   Before SBA removed EDF from the 504 Loan Program in December 2012, EDF had the second largest SBA 504 Program Loan portfolio, with over 2,300 loans whose balances totaled approximately $1.3 billion.   According to EDF's annual financial statements, from fiscal years 2006 through 2011, EDF received over $49 million in fees from its participation in the 504 Loan Program.

23.     Upon information and belief, Frank Dinsmore has served as EDF's CEO since its inception.   EDF operated in California and certain contiguous counties in Nevada and Oregon. Most loans in EDF's 504 Program Loan portfolio were commercial real estate loans made to California small business borrowers.

24.     Prior to 1994, all CDC-originated 504 loan applications were submitted to and approved by SBA.   In 1994, Congress created the PCLP, 15 U.S.C. § 697e, which authorized SBA to provide qualified CDCs with delegated authority to carry out certain functions previously reserved for SBA.   PCLP certifications are for two years, renewable periodically thereafter.   *See* 15 U.S.C. §§ 697d-697e; 13 C.F.R. §§ 120.840(e), 120.845(e).   Upon approval and at each renewal as a PCLP CDC, the CDC must sign a PCLP Loan Guaranty Agreement (PCLP Agreement) that requires the PCLP CDC to follow the SBA loan program requirements for the PCLP.   *See* SBA Standard Operating Procedure (SOP) 50 10 5(E), sub. A, ch. 3, para. V.C.

7

25.     PCLP CDCs have greater rights and responsibilities than other 504 Program Loan Program CDCs.   They may make credit decisions on, approve, process (underwrite), and close 504 Program Loans.   *See* 13 C.F.R. §§ 120.845(a), 120.848.   SBA does not review the PCLP CDC's credit decisions; it only reviews an eligibility checklist submitted to SBA by the PCLP CDC.

26.     In contrast to non-PCLP CDCs, for which SBA handles liquidation and collection activities on defaulted 504 Program Loans, a PCLP CDC must service, liquidate, and handle debt collection litigation for all loans in its portfolio on behalf of SBA.   *See* 13 C.F.R. §§ 120.848(f), 120.975.

27.     EDF became a PCLP CDC in 1997.   EDF thereafter entered into six PCLP Agreements with SBA (an original and five renewals), the most recent dated June 12, 2009.   The 2009 PCLP Agreement, which was scheduled to expire in 2011, was extended multiple times in 2011 and 2012.

28.     In exchange for the delegated authority to approve and make the credit decisions on 504 Program Loan applications, PCLP CDCs must reimburse SBA for 10% or 15% of any SBA loss resulting from default on a PCLP loan (PCLP Reimbursement Obligation), depending on whether the CDC is a participant in the Alternative Loan Loss Reserve Program, as described below.   *See* 15 U.S.C. § 697e(b)(2)(C).

29.      The PCLP CDC also is required to establish and maintain a Loan Loss Reserve Fund (LLRF) sufficient for the CDC to meet its obligation to protect SBA from the risk of loss on the CDC's PCLP loans.   *See* 15 U.S.C. §697e(b)(2)(D).   The PCLP CDC's LLRF ordinarily

must be 1% of the original principal amount of the CDC's PCLP loans (*i.e.*, 10% of the PCLP

CDC's 10% Reimbursement Obligation).   *See* 15 U.S.C. § 697e(c)(2); 13 C.F.R. § 120.847(b).

30.      If the LLRF does not contain sufficient funds at any time, the PCLP CDC must

make additional contributions to the LLRF to make up the difference.   *See* 13 C.F.R.

§ 120.847(j).

31.      The LLRF must be in a deposit account (or accounts) with a federally-insured

depository institution selected by the PCLP CDC.   *See* 13 C.F.R. § 120.847(c).   SBA has a first

priority, perfected security interest in the LLRF created by security agreements between the

PCLP CDC and SBA, and control agreements among the PCLP CDC, SBA, and the applicable

depository institution(s).   *See* 13 C.F.R. § 120.847(d); *see also* 15 U.S.C. § 697e(c)(3)(A).

32.      After EDF became a PCLP CDC, it established the required LLRF accounts and

entered into a security agreement with SBA covering those accounts.   SBA perfected its security

interest through control agreements with EDF and the respective banks for those accounts.

33.      When a PCLP loan defaults, the PCLP CDC must undertake all reasonable efforts

to collect that loan on SBA's behalf.   If a CDC disagrees with SBA about the CDC's plans for

liquidation, the CDC is required to appeal its dispute with SBA in accordance with 13 C.F.R.

§ 120.540(g).   Once the PCLP CDC determines that it has concluded all such efforts, it must

submit a wrap-up report to SBA or, if it does not do that, SBA otherwise may determine that the

PCLP CDC has exhausted all reasonable collections efforts with respect to the PCLP loan.   SBA

thereupon will charge off the loan, determine SBA's loss, and send an invoice to the PCLP CDC

for the PCLP Reimbursement Obligation owed by the CDC to SBA, including an explanation for the loss calculation.   *See* 13 C.F.R. § 120.847(h).

34.     The PCLP CDC, within 30 days of the invoice date, either must pay SBA's invoiced amount or file a written appeal with an explanation of its disagreement.   If the SBA's final decision is that all or part of the disputed amount is due, the PCLP CDC must pay the amount deemed due.   *Id.*

**D.     EDF's Election of the Alternative Loan Loss Reserve Pilot Program**

35.     In 2004, Congress authorized a statutory pilot program permitting qualified PCLP CDCs to calculate the required PCLP loan loss reserve fund using an alternative risk-based method (the ALLR Program).   *See* Premier Certified Lenders Program Improvement Act of 2004, Pub. L. 108-232, 118 Stat. 649; 15 U.S.C. § 697e(c)(7); H.R. Rep. No. 108-153 at 5 (2003).

36.     A PCLP CDC electing to participate in the ALLR Program was required by the statute to "make such contributions to its [LLRF] so as to ensure that its [LLRF] is sufficient, as determined by a qualified independent auditor, for the PCLP CDC to meet its obligations to protect SBA from the risk of loss."   15 U.S.C. § 697e(c)(7).

37.     The PCLP CDC was also required to establish and utilize an "appropriate and effective process for analyzing the risk of loss associated with its portfolio of PCLP loans and for grading each PCLP loan made by the company on the basis of the risk associated with such loan."   15 U.S.C. § 697e(c)(7)(F).

38.     To compensate SBA for its increased risk under the new alternative program,

Congress directed that PCLP CDCs that elected to participate in the ALLR Program must

reimburse SBA for 15% of the SBA loss (instead of the standard 10% obligation) on defaulted

PCLP Loans that were disbursed during the calendar quarters in which the PCLP CDC elected to

participate in the ALLR Program, regardless of whether the PCLP CDC eventually stopped

participating in the ALLR Program.   *See* 15 U.S.C. § 697e(b)(2)(C).   The legislation required

SBA to issue regulations implementing the ALLR Program within 45 days after enactment, but

SBA did not issue final regulations.

39.     However, the statute was self-executing and provided that PCLP CDCs could

elect to use the ALLR Program in the first calendar quarter that began after the end of the 90-day

period beginning with the date of enactment of the statute, which was May 28, 2004.   *See* 15

U.S.C. §§ 697e(c)(7)(A) and 697e(c)(7)(J); *see also* H.R. Rep. No. 108-153 at 17 (2003).

40.     By letter dated September 3, 2004, EDF notified SBA that it was electing to

participate in the ALLR Program beginning on the first eligible calendar quarter which started

October 1, 2004.

41.     On November 22, 2004, EDF again wrote to SBA, reiterating its eagerness to

participate in the ALLR Program.

42.     On December 14, 2004, SBA acknowledged in a letter to EDF that it had not

issued regulations, but agreed to recognize EDF's election of the ALLR Program.

43.     The ALLR Program was extended numerous times through subsequent

legislation, but lapsed on July 31, 2011.   *See* Small Business Additional Temporary Extension

Act of 2011, Pub. L. No. 112-17, § 2, 125 Stat. 221 (June 1, 2011).   Each quarter through

September 30, 2011 (the quarter-end after the July 31, 2011 lapse date), EDF continued to elect

to participate in the ALLR Program.

44.     From October 1, 2004 to September 30, 2011, EDF approved (and SBA funded)

1,696 PCLP loans in the total dollar amount of approximately $1.15 billion.

45.     Although EDF's PCLP loan portfolio increased more than five-fold between 2004

and 2011, EDF's LLRF only increased from approximately $1.62 million to approximately $1.97

million, or by approximately .03% of the face amount of PCLP loans added to its portfolio.

**E.      SBA Invoices To EDF**

46.     Beginning in 2007 or 2008, hundreds of millions of dollars' worth of EDF

originated loans became either (a) non-performing and had to be purchased by the SBA or (b) at

greater risk.

47.     In 2008, EDF began to experience increasing delinquencies on its 504 Program

Loan portfolio.

48.     In late 2009 and early 2010, SBA sent EDF four 15% PCLP Reimbursement

Obligation invoices totaling $239,632.   EDF paid the SBA invoices timely and without

objection.

49.     Between May 31, 2010 and June 10, 2010, SBA issued to EDF 25 more 15%

PCLP Reimbursement Obligation invoices totaling $2,120,478.23.   EDF appealed those

invoices pursuant to 13 C.F.R. § 120.847, and on August 25, 2010, SBA denied EDF's appeal.

50.     After receiving SBA's final decision on the appeal, EDF advised SBA that it could not meet its statutory obligation to reimburse 15% of the SBA's losses on its PCLP loans and, if it was required to do so, it would not remain viable.

51.     Since August, 2010, SBA has issued 100 additional invoices to EDF in the total amount of $9,566,872.   EDF appealed only seven of those invoices totaling approximately $604,332, leaving the balance uncontested by EDF.   SBA notified EDF in the Decision that the appeal on the seven invoices was denied.

52.     After the denial of EDF's motion for a temporary restraining order on December 21, 2012, SBA made demand on the banks holding EDF's PCLP LLRF accounts. SBA collected $1,980,190 from EDF's LLRF and applied the amounts collected to the May 31, 2010 and June 10, 2010 invoices.   The LLRF has been exhausted.

53.     The current total outstanding invoices immediately due and payable to SBA by EDF amount to $9,707,159, plus interest and penalties, as set forth below:

|   | Loan Name | SBA Loan No. | Invoice Date | Invoice Amount Due (not including interest and penalties) |
|---|---|---|---|---|
| 1 | E Real Mortgage | 9658344501 | 6/10/10 | $58,757 |
| 2 | Harman Motive Inc. | 2823486503 | 6/8/10 | $81,533 |
| 3 | Acquire Educational Services | 2793106503 | 10/16/10 | $155,083 |
| 4 | Aqua Service | 2804736500 | 10/18/10 | $56,772 |
| 5 | Max's Gallery Fine Jewelry | 5721774507 | 10/18/10 | $85,655 |
| 6 | ARC International Corp. | 3090246508 | 1/24/11 | $299,379 |
| 7 | Golden State Concrete | 9005244509 | 1/24/11 | $39,937 |
| 8 | TPS Steel Inc. | 9104374508 | 1/24/11 | $101,610 |
| 9 | Realty World | 9280854509 | 1/24/11 | $21,410 |
| 10 | Mac Transportation | 9666034502 | 1/24/11 | $49,229 |
| 11 | Help U Sell | 7414724502 | 5/5/11 | $59,204 |

13

|  | Loan Name | SBA Loan No. | Invoice Date | Invoice Amount Due (not including interest and penalties) |
|---|---|---|---|---|
| 12 | Harman Dermatology Medical | 8087014508 | 5/5/11 | $97,985 |
| 13 | Lathrop Chevron | 9450154504 | 5/5/11 | $85,570 |
| 14 | GTT International Inc. | 2195826507 | 5/5/11 | $180,146 |
| 15 | Futtatini LLC | 2775656500 | 5/5/11 | $65,229 |
| 16 | Auto America | 2984406502 | 5/5/11 | $55,569 |
| 17 | Valley Fleet and Lease | 1566506500 | 5/5/11 | $60,629 |
| 18 | Blue Collar Inc. | 2795216505 | 9/26/11 | $41,980 |
| 19 | C&T Truck Sales Inc. | 2721886504 | 9/26/11 | $46,427 |
| 20 | Exclusive Real Estate Corporation | 2887816505 | 9/26/11 | $275,678 |
| 21 | Galt Inn | 2541486505 | 9/26/11 | $171,006 |
| 22 | Gas Depot | 4868394500 | 9/26/11 | $30,820 |
| 23 | Gold Crown Home Loans Inc. | 1005996507 | 9/26/11 | $47,712 |
| 24 | Hamedan Enterprises Inc. | 3044686510 | 9/26/11 | $187,769 |
| 25 | Health Link Insurance Solution | 2662556509 | 9/26/11 | $87,727 |
| 26 | J 1 Auto Repair | 2146376507 | 9/26/11 | $36,081 |
| 27 | Lodi Equipment | 5660574501 | 9/26/11 | $1,791 |
| 28 | Loma Vista Bed & Breakfast | 2383826504 | 9/26/11 | $110,003 |
| 29 | Oak Creek Manor LLC | 2321386508 | 9/26/11 | $220,791 |
| 30 | The Finish Works Inc. | 2701266509 | 9/26/11 | $25,805 |
| 31 | Top Crain, LLC | 2493286509 | 9/26/11 | $84,936 |
| 32 | Wholesale Magazine Distribution | 2238966504 | 9/26/11 | $61,049 |
| 33 | Asset Escrow Services Inc. | 1326436504 | 9/30/11 | $203,790 |
| 34 | CDC Enterprises, Inc. | 1851826501 | 12/5/11 | $23,014 |
| 35 | Wink 2K Inc. | 9815764503 | 12/5/11 | $64,514 |
| 36 | Coastal Serenade LLC | 2157186504) | 12/5/11 | $63,159 |
| 37 | Nevada RE Marketing Ltd. | 8956584507 | 12/14/11 | $154,035 |
| 38 | Aureus & Associates Inc. | 2779156500 | 2/1/12 | $61,756 |
| 39 | Liberty Foil Company Inc. | 7733564504 | 2/2/12 | $24,327 |
| 40 | Direct Security | 7606704501 | 2/9/12 | $95,753 |
| 41 | Signature Furniture | 9060294505 | 3/30/12 | $98,418 |
| 42 | Garcia's Flooring Inc. | 2247356500 | 3/30/12 | $42,250 |
| 43 | Edward A. Shepard CPA Inc. | 3073616510 | 3/30/12 | $31,842 |

14

|     | Loan Name | SBA Loan No. | Invoice Date | Invoice Amount Due (not including interest and penalties) |
| --- | --- | --- | --- | --- |
| 44 | The Harty House Doctor Inc. | 2957946505 | 3/30/12 | $76,221 |
| 45 | Southern California Tow & Tran | 2550236502 | 3/30/12 | $82,234 |
| 46 | Capital Loan Specialists | 2603856505 | 4/17/12 | $216,170 |
| 47 | Tarzana Beauty Collections, Inc. | 2202706505 | 4/17/12 | $137,160 |
| 48 | Engen Consultants | 9008424510 | 4/17/12 | $67,047 |
| 49 | Etamadi Star Dental Corporation | 1786876508 | 4/17/12 | $217,024 |
| 50 | Exhibit Space Works, Inc. | 3177766503 | 4/13/12 | $215,984 |
| 51 | Citizens Capital Corporation | 2692486502 | 4/12/12 | $69,015 |
| 52 | San Diego Real Estate Owned, Inc. | 9154804504 | 4/12/12 | $152,990 |
| 53 | Villa Lanta,LLC | 3297836505 | 4/13/12 | $95,409 |
| 54 | Citizens Capital Corporation | 2692566502 | 4/12/12 | $80,664 |
| 55 | Central Visual Information System | 2703606508 | 4/13/12 | $97,663 |
| 56 | Alpine Tendercare | 9592554501 | 4/13/12 | $87,330 |
| 57 | Primestar Financial Group | 2406806502 | 4/13/12 | $65,660 |
| 58 | Lou Hernandez Inc. | 9256464510 | 4/13/12 | $86,803 |
| 59 | Happy Team Inc. | 9597644503 | 4/13/12 | $278,372 |
| 60 | WCMA Inc. | 2952636507 | 4/13/12 | $60,896 |
| 61 | Primo Derma Inc. | 3232106508 | 4/13/12 | $87,505 |
| 62 | SEEM LLC | 2990636508 | 4/17/12 | $101,774 |
| 63 | Gregory C. Curtis | 2762316504 | 4/12/12 | $24,555 |
| 64 | Big Vision Inc. | 9008804506 | 4/14/12 | $128,512 |
| 65 | Fender Bender International Inc. | 3262086505 | 4/14/12 | $117,373 |
| 66 | Desert Dynamics Inc. | 9365054504 | 4/14/12 | $42,261 |
| 67 | DEG Welt Pocket & Embroidery | 2318626507 | 4/15/12 | $76,771 |
| 68 | House of Cars Inc. | 2418806510 | 4/14/12 | $89,414 |
| 69 | Amighini Architectural Inc. | 3162526509 | 4/14/12 | $94,473 |
| 70 | Frank J. Lizarraga | 2983996502 | 4/14/12 | $191,522 |
| 71 | Matthew Kolb | 2389646510 | 4/14/12 | $83,456 |
| 72 | JDS Lost Oaks, LLC | 2763786507 | 4/15/12 | $60,372 |
| 73 | Tax Enterprises Inc. | 3149456507 | 6/7/12 | $180,947 |

|     | Loan Name | SBA Loan No. | Invoice Date | Invoice Amount Due (not including interest and penalties) |
|-----|-----------|--------------|--------------|-----------------------------------------------------------|
| 74  | K&K Supply and Printing Co. | 2789386503 | 6/7/12 | $109,896 |
| 75  | Alice and Helen Enterprises | 2980366005 | 6/22/12 | $102,825 |
| 76  | Clear Point Solutions | 3099956004 | 6/22/12 | $31,240 |
| 77  | Sanhtai | 2811796004 | 6/22/12 | $122,491 |
| 78  | Ivan J. Freyre Real Estate | 9202124006 | 6/22/12 | $66,054 |
| 79  | JJS Inc. General Contractors | 9308394004 | 6/22/12 | $153,200 |
| 80  | Loren Distributors Intl | 2278246004 | 6/22/12 | $72,919 |
| 81  | AC General Engineering | 2877816000 | 6/22/12 | $15,173 |
| 82  | Left Field Productions | 2770206506 | 6/17/12 | $65,490 |
| 83  | Kit A. Enger and JoAnn Enger | 2752576508 | 6/17/12 | $192,109 |
| 84  | Loren Distributors Intl | 2278286506 | 6/17/12 | $70,807 |
| 85  | Colfax City Carwash | 2857216501 | 6/17/12 | $60,315 |
| 86  | AC General Engineering | 2877056509 | 6/17/12 | $93,090 |
| 87  | Edith Morre, Inc. | 2756746508 | 6/17/12 | $125,645 |
| 88  | Misk Investments, LLC | 3075906507 | 6/17/12 | $105,442 |
| 89  | SRS Engineering Corporation | 9257374509 | 11/26/12 | $53,963 |
| 90  | Inn 4 Site, Inc. | 3242936503 | 11/26/12 | $174,224.31 |
| 91  | 7YP Inc./First Choice Roofing | 3147846502 | 11/26/12 | $95,184 |
| 92  | Vitiello & Hansen, Inc. | 2336436502 | 11/26/12 | $48,248 |
| 93  | JBL Home Appliance Center, Inc. | 3145046505 | 11/26/12 | $42,333 |
| 94  | Ivies Drywall, Inc. | 2605076500 | 11/26/12 | $32,753 |
| 95  | Chaparral Metals Transport, Inc. | 2868446506 | 11/26/12 | $44,934 |
| 96  | H2 Insurance Services | 2192046503 | 11/26/12 | $68,608 |
| 97  | Walter Roger Holding Group, LLC | 3181266509 | 11/26/12 | $61,559 |
| 98  | Graphic Impressions | 2187346505 | 11/28/12 | $53,343 |
| 99  | At Home Theater & Audio | 8835574508 | 11/28/12 | $8,711 |
| 100 | Hyun Gu Oh | 2705426506 | 11/28/12 | $119,365 |
| 101 | New Image Commercial Flooring | 1705286507 | 11/28/12 | $67,094 |
| 102 | Sebastopol Ford Inc. | 2057106505 | 12/3/12 | $238,451 |

54.     The foregoing invoices were due and payable to SBA within 30 days of the date of the invoice or from the date of denial of any appeal.   EDF failed to pay the invoices by the due dates.   Because the invoices are delinquent, EDF owes SBA interest of 1% accruing from the date of delinquency on each invoice.   31 U.S.C. § 3717.

55.     SBA also notified EDF that in addition to interest, a penalty charge of 6% per year, accruing from the date of delinquency, would be assessed on any invoice delinquent for more than 90 days.   Each of the foregoing invoices has been delinquent for more than 90 days, thus EDF owes SBA a penalty charge of 6% per year accruing from the date of delinquency on each invoice.   31 U.S.C. § 3717(e)(2).

56.     SBA will continue to invoice EDF for its 15% PCLP Reimbursement Obligation on other charged-off 504 Program Loans during the course of this action.

## F.     EDF-Requested Liquidation Pilot Program

57.     Because the liens securing SBA's 504 Program Loans were subordinate to the Senior Third Party Lender loans' senior liens, beginning in late 2007 and early 2008, the substantial decrease in real estate values due to the California commercial real estate market decline left, in most cases, very little equity available to protect SBA's 504 Program Loans in EDF's portfolio.

58.     SBA's long-standing policy, of which EDF was aware and bound to follow, was that, before SBA would enter a protective bid to buy out the Senior Third Party Lender at a foreclosure sale and thereby more than double SBA's exposure on its 504 Program Loans, the

504 Program project property had to have at least 25% (recently reduced to 10%) remaining equity available to apply to the then-outstanding SBA 504 Program Loan amount.

59.     EDF knew that, because of the market decline, most of its delinquent PCLP 504 Program Loans did not meet the SBA criteria for the entry of such a protective bid by SBA.

60.     With the growing number of delinquencies, EDF's 15% PCLP Reimbursement Obligations to SBA were growing rapidly.

61.     EDF complained to SBA that SBA's protective bid formula was "leaving money on the table."   EDF asserted that SBA could maximize its recovery if it used additional funds to buy out the Senior Third Party Lender and permit EDF to market and sell SBA's collateral.

62.     In early 2009, at EDF's request, SBA agreed to a Liquidation Pilot Program under which SBA would advance additional funds to purchase the Senior Third Party Lender loans on certain SBA 504 Program Loans based on the recommendation of EDF, even where the remaining equity in the 504 Program project property was less than 25%.

63.     Under the Liquidation Pilot Program, SBA advanced funds in the form of Treasury checks made payable directly to the Senior Third Party Lender to purchase the Senior Third Party Lender loans on ten 504 Program project properties, and funds to EDF to pay past due property taxes and other fees on those ten properties.

64.     Pursuant to written agreements between EDF and SBA for each 504 Program project property in the Liquidation Pilot Program, EDF agreed, among other things, to do the following:

18

       a.      Repay each SBA advance to SBA, with interest at the Treasury rate, either upon sale of SBA's collateral or two years from the date of the SBA advance, whichever occurred first;

       b.      Apply any proceeds realized from the sale of SBA's collateral first to the payment of reasonable expenses incurred by EDF in connection with the disposition of the collateral;

       c.      Remit to SBA 50% of the net recoveries (after payment of the SBA advances and reasonable recovery expenses) resulting from the sale of SBA's collateral; and

       d.      Provide SBA with an accounting of all actions taken in connection with the disposition of SBA's collateral, including a summary of major actions taken such as: resolution of the Senior Third Party Lender lien position, expenses incurred in connection with the collateral disposition, and gross and net proceeds realized from the collateral disposition.

65.      In addition to advancing Government funds, SBA assigned to EDF, for purposes of collection, SBA's Deeds of Trust and Promissory Notes for each of the ten 504 project properties.

66.      The following chart lists the ten SBA 504 Program Loans that were included in the Liquidation Pilot Program:

| Loan Name | SBA Loan Number | Liquidation Pilot SBA Advance Amount | SBA 504 Loan Amount | SBA Advance Date | EDF Due Date | SBA Advance Repaid? | Accrued Interest as of Due Date |
|-----------|-----------------|--------------------------------------|---------------------|------------------|--------------|---------------------|----------------------------------|
| Thomas Zorich | 1951366001 | $496,073 | $430,000 | 3/16/09 | 3/16/11 | No | $8,893 |
| Nevada RE | 8956584006 | $1,554,060 | $1,216,000 | 5/31/09 | 5/31/10 | Yes | --------- |
| PMS Treatment | 2504456508 | $692,887 | $497,000 | 5/31/09 | 5/31/11 | No | $12,058 |
| Green Road Hotels | 2571256006 | $5,041,939 | $2,000,000 | 6/30/09 | 6/30/11 | No | $89,202 |
| Careways | 9014624507 | $806,447 | $554,000 | 6/30/09 | 6/30/11 | Yes | --------- |
| Ainsworth I | 2218006000 | $667,246 | $536,000 | 6/30/09 | 6/30/11 | Yes | --------- |
| Ainsworth II | 2905296008 | $413,255 | $324,000 | 6/30/09 | 6/30/11 | No | $7,410 |
| Familia Flores | 8982114510 | $1,044,520 | $721,000 | 8/31/09 | 8/31/11 | No | $21,577 |
| Quality One | 2910186505 | $745,965 | $543,000 | 8/31/09 | 8/31/11 | No | $15,409 |
| Frutos | 8896414510 | $555,563 | $437,000 | 8/31/09 | 8/31/11 | No | $11,415 |

67.     EDF complied with all of its Liquidation Pilot Program obligations on only one

504 Program Loan — Nevada RE.   EDF repaid the SBA advance upon the sale of the collateral,

remitted SBA's 50% share of the net recoveries, and provided SBA with an accounting of the

disposition of SBA's collateral.

68.     EDF repaid the Liquidation Pilot Program SBA advances on only two other 504

Program Loans — Careways and Ainsworth I.   EDF failed and refused to remit SBA's 50%

share of the net recoveries on these two 504 Loans, and failed and refused to provide SBA with

an accounting of the disposition of SBA's collateral.

69.     SBA has made written demands on EDF for repayment of the Liquidation Pilot Program SBA advances on the seven other 504 Program Loans — Thomas Zorich, PMS Treatment, Green Road Hotels, Ainsworth II, Familia Flores, Quality One and Frutos.   EDF has failed and refused to pay, despite SBA demand.

70.     Of the nine 504 Program Loans for which EDF has not fully complied with its Liquidation Pilot Program obligations, SBA has obtained land record information confirming EDF's sale of SBA's collateral on six loans — Careways, Ainsworth I, Green Road Hotels, Familia Flores, Quality One and Frutos.

71.     SBA's search of the land records indicates that EDF has not sold SBA's collateral on the other three loans — Thomas Zorich, PMS Treatment and Ainsworth II.

72.     Based on SBA's review of the land records, SBA has determined that EDF has failed to remit to SBA approximately $8.2 million in proceeds from the sale of SBA's collateral for the six loans.   The estimated $8.2 million in proceeds is due and payable to SBA for (a) repayment of the Liquidation Pilot Program SBA advances, and (b) SBA's 50% share of the net recoveries on those loans.   SBA is unable to determine the precise amount of unremitted SBA collateral proceeds because EDF has failed and refused to provide SBA with an accounting of the disposition of the collateral.   Upon information and belief, EDF's reasonable recovery expenses are substantially less than the unremitted proceeds.   The following chart identifies the SBA collateral sold by EDF on the six loans:

| Loan Name | Unpaid Liquidation Pilot SBA Advance Amount | Date of Sale | Sale Price |
|---|---|---|---|
| Green Road Hotels | $5,041,939 | 2/3/12 and 9/27/11 | $5.87 million |

| Loan Name | Unpaid Liquidation Pilot SBA Advance Amount | Date of Sale | Sale Price |
|---|---|---|---|
| Careways | $806,447 | 8/11/10 and 2/9/11 | $1.4 million |
| Ainsworth I | $667,246 | 6/22/11 | $735,000 |
| Familia Flores | $1,044,520 | 9/27/11 | $1 million |
| Quality One | $745,965 | 6/11/11 | $825,000 |
| Frutos | $555,563 | 7/13/11 | $810,000 |

## G.   Unauthorized Transfers to Redemption

73.     Without SBA's authorization, EDF took title to the Senior Third Party Lender Loans that were purchased with the Liquidation Pilot Program advances in the name of EDF's affiliate, Redemption.

74.     In addition to the advances paid directly to the Senior Third Party Lenders, SBA advanced $623,547 directly to EDF for the express purpose of paying real estate taxes and flag fees on the Green Road Hotels loan.   EDF, again without SBA's authorization, did not use the $623,547 to pay the taxes and hotel flag fees but instead improperly transferred this SBA advance to a Redemption bank account.   SBA demanded return of the $623,547, but EDF and Redemption have refused.

75.     Because it now held the first lien on the SBA collateral, Redemption took title to SBA's collateral at foreclosure and subsequently sold six of the properties without remitting the collateral proceeds to SBA, all without SBA's authorization.   Despite SBA demand, both EDF and Redemption have failed and refused to remit to SBA the estimated $8.2 million in SBA's share of the proceeds from the sale of SBA's collateral.

76.     Upon information and belief, Redemption recently returned to EDF the estimated $8.2 million in proceeds of the sale of SBA's collateral described above and the $623,547 in unused SBA advances.

77.     EDF may intend to use the estimated $8.2 million in proceeds of the sale of SBA's collateral, plus the $623,547 in unused SBA advances, to pay EDF's general creditors.

78.     EDF cannot use these funds to pay its general creditors because the funds are the proceeds of SBA's collateral and EDF holds the funds in constructive trust for SBA.   SBA is entitled to receive SBA's share of the collateral proceeds because EDF and/or Redemption hold the funds in constructive trust for SBA.   Despite SBA's demand, both EDF and Redemption have failed and refused to remit the proceeds to SBA.

79.     Based on a search of the land records, SBA has determined that Redemption now holds title to SBA's collateral for the three loans where the SBA collateral has not been sold — Thomas Zorich, PMS Treatment and Ainsworth II.   Redemption obtained title to this collateral after EDF used Government funds to purchase the Senior Third Party Lender loans.   Upon information and belief, Redemption is collecting lease payments on some or all of the three collateral properties.

80.     SBA is entitled to take title to the three unsold collateral properties, because Redemption holds such properties in constructive trust for SBA.   Despite SBA demand, both EDF and Redemption have failed and refused to transfer title to SBA's collateral on these three loans to SBA.

H.     **EDF's Obligations to SBA**

81.     EDF's current obligations to SBA include: (a) $9,707,159, plus interest and penalties, for 102 unpaid 15% PCLP Reimbursement Obligation Invoices; (b) $8,990,192, plus accrued interest of $165,964 as of the due dates for the advances, plus interest and penalties on delinquent debt, plus SBA's 50% share of net recoveries on sold properties, all due under the Liquidation Pilot Program (these amounts include what SBA estimates to be approximately $8,200,000 in proceeds from the sale of properties, $623,547 in unused SBA advances, and an unknown amount of lease payments, now held in constructive trust by EDF and/or Redemption); and (c) title to three unsold Liquidation Pilot Program properties, held in constructive trust by EDF and Redemption.

### CAUSES OF ACTION

#### Count 1: Failure to Pay Invoiced Obligations (EDF)

82.     The preceding paragraphs are incorporated herein.

83.     EDF is required by statute and regulation to pay all 15% PCLP Reimbursement Obligation invoices sent by SBA to EDF.

84.     EDF has failed to pay 102 PCLP Reimbursement Obligation invoices sent by SBA to EDF.

85.     EDF owes SBA $9,707,159, plus interest and penalties, on the unpaid PCLP Reimbursement Obligation invoices.

#### Count 2: Breach of Contract – PCLP Reimbursement Obligations (EDF)

86.     The preceding paragraphs are incorporated herein.

24

87.     By entering into the PCLP Agreements and issuing PCLP loans as a PCLP Lender, EDF entered into valid and enforceable contracts with SBA.

88.     The contracts require that EDF timely reimburse SBA if and when SBA incurs losses on the PCLP loans issued by EDF and invoices EDF for its share of the losses in accordance with the terms governing EDF's participation as a PCLP Lender.

89.     EDF has breached the contracts by failing to perform in accordance with the contracts it entered as a PCLP CDC.

90.     SBA has suffered damages as a result of EDF's breach.

Count 3:   Failure to Remit Collections (EDF)

91.     The preceding paragraphs are incorporated herein.

92.     EDF is required by 13 CFR § 120.975(a) of SBA's regulations to liquidate and handle debt collection litigation on behalf of SBA.

93.     EDF is required by Chapter 19, Para. B.3. of SBA SOP 50 51 3 to remit recoveries to SBA within 15 business days of receipt.

94.     EDF has failed to remit SBA's share of the recoveries on the Liquidation Pilot Program loans, as required by regulations and SOP.

95.     SBA has suffered damages as a result of EDF's failure to remit collections in violation of its obligations under regulations and SOP.

Count 4: Breach of Contract – Liquidation Pilot Program Obligations (EDF)

96.     By participating in the Liquidation Pilot Program, EDF entered into valid and enforceable contracts with SBA.

25

97.     The Liquidation Pilot Program contracts obligate EDF to repay SBA the funds advanced by SBA to EDF and to the Senior Third Party Lenders in connection with the Liquidation Pilot Program, with interest at the Treasury rate, upon sale of SBA's 504 Loan Program collateral or two years from the date of the SBA advance, whichever occurred first. EDF must also remit to SBA 50% of the net recoveries (after payment of the SBA advance and reasonable recovery expenses) resulting from the sale of SBA's Loan collateral.   Additionally, EDF is required to provide SBA with an accounting of all actions taken in connection with the disposition of SBA's collateral, including a summary of major actions taken such as resolution of the Senior Third Party Lender lien position, expenses incurred in connection with the collateral disposition, and gross and net proceeds realized from the collateral disposition.

98.     EDF has breached the contracts by failing to perform in accordance with the contracts it entered as a participant in the Liquidation Pilot Program.

99.     SBA has suffered damages as a result of EDF's breach.

                    Count 5:   Unjust Enrichment (EDF and Redemption)

100.    The preceding paragraphs are incorporated herein.

101.    EDF received from SBA funds to pay outstanding taxes and other fees and Treasury checks to purchase senior liens so that it could take title to the ten properties (Pilot Properties) and collect on the corresponding SBA loans.   Without authorization from SBA, EDF involved Redemption in the Pilot Properties, and allowed Redemption to hold title to the Pilot Properties and the proceeds from the sale of the Properties.

102.     To date, Defendants maintain custody of: (a) funds advanced directly to EDF; (b) proceeds received from the sale of six of the Pilot Properties; and (c) title to three other Pilot Properties (collectively, the Trust Properties).

103.     Defendants refuse to turn over the Trust Properties to SBA, notwithstanding (a) EDF's obligation to collect on the loans on SBA's behalf ; (b) EDF's agreement to repay the proceeds of the sale of any property to SBA; and (c) EDF's expulsion from the 504 Loan Program.

104.     Defendants would be unjustly enriched if they were permitted to retain the Trust Properties, and have an equitable duty to convey the Trust Properties to SBA pursuant to the imposition of a constructive trust.

Count 6:   Conversion (EDF and Redemption)

105.     The preceding paragraphs are incorporated herein.

106.     SBA advanced funds for the purchase of the senior liens and conveyed funds to EDF for the limited purpose of paying outstanding taxes and other fees, obtaining the Pilot Properties, and collecting on the corresponding SBA loans.

107.     EDF unlawfully converted the Trust Properties when it, without authorization: (a) transferred certain of the Trust Properties to Redemption; and (b) improperly retained certain of the Trust Properties.

108.     Redemption was aware of EDF's unlawful conversion of the Trust Property, and aided and abetted EDF in the wrongful conversion of the Trust Properties by allowing the Trust Properties to be transferred to it.

27

109.    SBA has suffered damages as a result of the unlawful conversion by EDF and Redemption.

### REQUESTS FOR RELIEF

The United States respectfully requests that the Court:

A.    Enter a judgment against EDF and award SBA damages in the amount of at least $9,707,159, plus interest, penalties and costs, equal to all amounts owed by EDF to SBA pursuant to PCLP Reimbursement Obligations up to and including the date of entry of judgment against EDF;

B.    Enter a judgment against EDF and award SBA damages in the amount of at least $8,990,192, plus accrued interest of $165,964, plus additional interest, penalties and costs, as amounts owed to SBA pursuant to the Liquidation Pilot Program;

C.    Enter a declaratory judgment in favor of SBA that: (i) the Liquidation Pilot Program created a trust relationship between Defendants, as the constructive trustees, and SBA, as the beneficiary, wherein Defendants hold the Trust Property in constructive trust for SBA; (ii) Defendants must convey the Trust Property, including without limitation at least $8,823,547 in cash to SBA; and (iii) EDF and Redemption are required to perform an accounting to determine any remaining obligations owed to SBA pursuant to the Liquidation Pilot Program;;

D.    Impose a constructive trust on the Trust Property and order that Defendants, as constructive trustees, convey the Trust Property to SBA; and

E.    Grant such other and further relief to which the United States shall be found to be entitled, including any costs incurred by the United States in this action.

Dated: March 25, 2013

Respectfully Submitted,

STUART F. DELERY
Acting Assistant Attorney General

/s/ Victor W. Zhao_____
J. CHRISTOPHER KOHN
ROBERT E. KIRSCHMAN, JR.
DAVID S. KLONTZ
VICTOR W. ZHAO

Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington D.C. 20044
Tel. (202) 307-0958
Fax (202) 514-9163
Victor.W.Zhao@usdoj.gov

ATTORNEYS FOR SMALL BUSINESS
ADMINISTRATION

OF COUNSEL:
Eric S. Benderson
Christine B. Nell
Gary Fox
UNITED STATES SMALL BUSINESS ADMINISTRATION